## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LYDIA HAGOS,<br><br>     *Plaintiff*,<br><br>v.<br><br>MICHAEL R. POMPEO,<br><br>     *Defendant*. | No. 18-cv-2647 (DLF) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Lydia Hagos, appearing *pro se*, brings this action against the Department of State ("State"), alleging that she was subjected to discrimination while employed by a State contractor.  Hagos bases her discrimination claims on her disability and national origin.  She further alleges that she faced retaliation and a hostile work environment.  Before the Court is State's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. 21 (Mot. to Dismiss).  For the reasons stated below, the Court will grant State's motion in part and deny it in part.

## I.  BACKGROUND

### A. Facts

On March 21, 2005, Federal Management Systems, Inc. extended a job offer to Hagos to work on a State Department contract as an accountant.  *See* Dkt. 1 (Compl.) at 25.  Hagos worked for "contractor FMS . . . for many years" when "Raven Tek . . . took over the contracting company."  *Id.* at 2; *see* https://www.raventek.com/about-us (describing contracting services with the federal government).  Hagos alleges that RavenTek "only paid" her.  *Id.*  It was "never involved in" her job duties, but it "got involved after" she notified the company about "the harassment" that

"was getting overwhelming."[1]  *Id.*   In addition to harassment, Hagos alleges, among other things, that she "was under a lot of stress and was sick." *Id*. at 8.  Hagos recounts events dating as far back as 2012, when she "was hospitalized [and] diagnosed with generalized panic attack, stress related." *Id*. at 5.  In May 2015, Hagos suffered "a heart attack due to stress" and was on short-term disability until September 7, 2015.  *Id*. at 8.  When Hagos returned to her job in September, she worked four days weekly until January 2016, when she was told that she could no longer work four days a week and therefore was "denied [an] accommodation."  *Id*.

According to Hagos, she "was fired" by State employee "Mr. Hodges," *id*. at 2, who at some point was her supervisor.  *See id*. at 4.  Hagos alleges that Hodges had "shown his dislike toward [her] and want[ed] to fire [her] ever since 2012, but [he] was not successful [since] upper management was aware of his behavior [toward] many staff not only contractors but also civil service employees." *Id*. at 11.  Hagos alleges that it was Hodges who "told" her (1) on January 15, 2016, that she could no longer "work 4 days a week per [his supervisor] Mr. Kidane," *id*. at 8, and (2) on January 20, that "Kidane said" that she was "not mentally capable of doing [her] work."  *Id*. Finally, Hagos alleges that on May 19, 2016, Hodges "sent an email to management/Med and Raventec, requesting [Hagos's] immediate removal from Med Finance."  *Id*. at 5.

By letter of June 3, 2016, parent company RavenTek Solutions terminated Hagos's employment "for cause," citing as grounds "misconduct by you that is detrimental to the Company, insubordination."  *Id.* at 15.

**B.  Procedural History**

On August 29, 2016, Hagos filed a formal complaint of discrimination with State.  Mot. to Dismiss, Ex. 2.  In an affidavit provided to the EEO investigator in April 2017, RavenTek's Chief

---

[1]   The Complaint contains various references to what might be an administrative record.  For the purposes of this opinion, the factual allegations, to the extent relevant and intelligible, are liberally construed and accepted as true.

Operating Officer confirmed that at the relevant time RavenTek "was the Prime Contractor on Dept. of State MED," and the "Task Order ended on 9/30/2016." *Id.*, Ex. 1.  In addition, the Chief Operating Officer stated that (1) Hagos was a RavenTek employee who was "subcontracted" to State; (2) the decision to terminate Hagos's employment was not made at the "request or direction of [State] officials"; and (3) the decision "was made solely by RavenTek, based on the contents of the June 3, 2016 letter." *Id.*  On July 13, 2018, an EEO Administrative Judge issued an Order of Dismissal, that State decided to "fully implement."  Compl. at 28 (Aug. 21, 2018 Final Order).

On November 15, 2018, Hagos filed this civil action, and on October 24, 2019, State moved to dismiss the complaint.  Despite the Court's orders advising Hagos of deadlines to respond to State's motion to dismiss, Hagos has failed to file a response and appears to have no intention of doing so without counsel.  *See* Minute Orders of January 27, 2020 and October 15, 2019.  Having duly advised Hagos as a *pro se* party, *see* Order, Dkt.  22, the Court will proceed to the merits of State's motion to dismiss.

## II.  LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  But the assumption of truth does not apply to a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

## III. ANALYSIS

In its motion to dismiss, the Department of State argues that Hagos has failed to state a claim for relief because she was a contractor, not a federal employee, and contractors cannot sue for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII).  Mot. to Dismiss at 4.  State is correct with respect to Hagos's Title VII claims. But Hagos's complaint also alleges disability discrimination, a claim that arises under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (Rehabilitation Act).  Federal contractors are not barred from bringing disability discrimination claims under the Rehabilitation Act.  Therefore, the Court will grant in part and deny in part State's motion to dismiss.

Title VII proscribes discrimination against federal employees based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-16.  The D.C. Circuit has held that Title VII also prohibits the federal government from retaliating against its employees for exercising their rights under the statute.  *See Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (concluding that "Congress clearly has waived sovereign immunity from [Title VII] claims of retaliation").  But

"Title VII cover[s] only those individuals in a direct employment relationship with a government employer," not individuals who "are independent contractors" or, like Hagos, "those not directly employed by" the federal government. *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979). The Court thus agrees with State that dismissal of Hagos's national origin discrimination, retaliation, and hostile work environment claims is warranted.

However, Hagos's disability claim is governed by the Rehabilitation Act, 29 U.S.C. §§ 791-794, not Title VII. Congress enacted the Rehabilitation Act "to aid [disabled] individuals and in so doing . . . 'established the principle that (a) the federal government, (b) federal contractors, and (c) recipients of federal funds cannot discriminate against the handicapped.'" *Milbert v. Koop*, 830 F.2d 354, 355 (D.C. Cir. 1987) (quotations and citations omitted). To that end, § 503 of the Rehabilitation Act requires that a "party contracting with the United States [for an amount in excess of $10,000] shall take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). In addition, "§ 504 addresses discrimination in 'any program or activity conducted by any Executive agency,'" *Redd v. Summers*, 232 F.3d 933, 937 (D.C. Cir. 2000) (quoting 29 U.S.C. § 794(a). Under § 504, an agency's "contract may constitute a federal program or activity, in which case [the plaintiff] is entitled to show that she was unlawfully denied participation in the contract or retaliated against for protesting such denial." *Redd*, 232 F.3d at 941. Therefore, State's sole argument in its Motion to Dismiss—that Hagos was a contractor rather than a federal employee—does not defeat Hagos's claim of disability discrimination under the Rehabilitation Act.

Accordingly, it is

**ORDERED** that the defendant's Motion to Dismiss, Dkt. 21, is **GRANTED** with respect to the plaintiff's Title VII claims. It is further

**ORDERED** that the defendant's Motion to Dismiss, Dkt. 21, is **DENIED WITHOUT**

**PREJUDICE** as to the plaintiff's Rehabilitation Act claim.  It is further

      **ORDERED** that on or before June 6, 2020, the parties shall propose a schedule for further

proceedings.

                                                            DABNEY L. FRIEDRICH
                                                           United States District Judge

Date: May 7, 2020